JOHN FOXTON *versus* THEODORE KUCKING AND PORTLAND SAVINGS BANK, *Tr.*

Upon the condition that his bounty money should be deposited for his benefit in the Portland Savings Bank, the trustees of the State Reform School permitted one of its inmates to enlist as a volunteer in the military service of the United States, and thereupon they deposited his bounty money in the bank, in his own name, upon the following special condition prescribed in all such cases, and entered upon the books of the bank, viz. : — " All bounty money received by said boys, shall be deposited in the Portland Savings Bank, and there remain    *    *    till they have severally reached the age of twenty-one years, and no part of said deposits is to be withdrawn without the consent of the trustees of the State Reform School." In a trustee process, brought by a creditor against such volunteer, for necessaries purchased after his discharge from the service and before he had attained his majority : — *Held,* —

1. That the money is due absolutely to the defendant and is payable to him or his order on his reaching the age of twenty-one years, without the consent of the trustees of the Reform School ; — and

2. That the bank is chargeable as trustee, and will be compelled to pay the amount charged, when the same is payable according to the terms of the deposit.

ON EXCEPTIONS.

ASSUMPSIT on account annexed.

Upon representation that the principal defendant was a minor, a guardian *ad litem* was appointed. After appearance by the guardian, a default was entered against the principal defendant for an agreed sum found and admitted by the guardian to be for necessaries.

At the return term, the alleged trustee, by Joseph C. Noyes, treasurer, disclosed : —

That before Feb. 2, 1864, the principal defendant was an inmate of the Reform School, under judicial sentence, and, upon his request, was permitted by the trustees to enlist as a volunteer in the military service of the United States. The trustees gave permission, upon the condition that his bounty money, or such part of it as they thought proper, should be deposited for his benefit in the bank, and, on the day above named, there was deposited, in his name, by the trustees, the sum of two hundred fifty-five dollars, upon the following special condition prescribed by the trustees in all such cases and entered in writing on the books of the bank.

"All bounty money received by said boys, shall be deposited in the Portland Savings Bank, and there remain, with such additions as may be made from time to time, under their allotments, till they have severally reached the age of twenty-one years, and no part of said deposits is to be withdrawn, without the consent of the trustees of the State Reform School."

The dividends accrued upon this deposit, up to and including the dividend of Nov., 1865, amounting to thirty-two dollars sixty-five cents ; and, on the date of service of the plaintiff's writ, Nov. 7, 1865, the bank held, on this account, under the foregoing conditions, the said amount of $255, and $32,65 — in all $287,65 and no more — and had not, otherwise, any goods, effects, or credits, of the defendant in its hands.

That the said Theodore Kucking was then a minor, and no consent was then, or had been given by the trustees for

the withdrawal of said deposit, or any part of it; and that he will not be of age until July 4, 1868.

The presiding Judge ordered the trustee to be charged on the disclosure for the amount of the plaintiff's judgment, being less than the amount disclosed. Whereupon the trustee alleged exceptions.

*P. Barnes*, for the trustee.

1. The arrangement, by which the money in question was placed beyond the control of the minors, was one of which his creditor has no right to complain.

Plaintiff either did not know of the existence of this fund, and gave no credits on the strength of it, or, if he did know of it, he knew its conditions and had no right to assail them.

The case is in no respect different from the agreement, by which a father, consenting to the enlistment of a son who was under military age, might arrange for the safe keeping and control of his bounty money.

2. The disclosure shows a case which is not within the statute of foreign attachment at all. That statute provides only for cases where goods, effects or credits are "due" or "payable," as a matter of mere paternal relation solely between the depositor and the depositary, — a case of ordinary contract between two parties, founded upon values passing between them alone.

But the present case is a case of *trust*, in the sense of the general law, and one where the trust was created by the lawful appointment of a third party, which party has prescribed, and had a right to prescribe the conditions of the trust. The terms so prescribed affect the trust, from its beginning to its termination, and must be observed by the trustee. They control the trustee as well as the beneficiary.

Whenever, by such appointment, whether by gift, grant, devise, or in whatever other lawful way, the donor, or party lawfully constituting the trust, has placed the property be-

yond the control of the beneficiary, the Court cannot abrogate such appointment.

3. Not only does the control instituted but reserved by the trustees of the Reform School, affect and bind this trust from its inception to its end, but the trustee, the bank, also has an interest, which cannot be vacated by the beneficiary, or by any claiming under or through him. By positive law, the bank, on receiving this deposit, was bound to invest it productively; and has a right to keep the fund until the proper consent is given for its withdrawal. The investment had been made. ·No consent for withdrawal or change is shown. The bank is under no obligation to break up such investment, and be at the trouble of converting it into money for the use of the beneficiary, or to pay his debts at this time.

It makes no difference in such a case, whether the beneficiary is a minor or an adult.

4. Nor does it make any difference that the claim is for necessaries. The *prochein ad litem* might give the plaintiff judgment on that point, but that consideration does not affect the party who constituted the trust nor the trustee. The trustees of the Reform School, if they anticipated that the minor's enlistment would expire before his majority, knew well enough that he must then have the necessaries of life. But they assumed, and had a right to assume that, as he would then have, by their consent, the command of his own time, he could subsist himself by his industry. By such habits of enforced industry, he might gain such steadiness of character and knowledge of the value of· money, that he could, eventually, usefully receive and enjoy the fund which they had taken care to have laid up in store for him.

5. As to a judgment payable in the future ; — besides the excessive inconvenience of keeping a trustee in Court until July, 1868, or the impracticability of issuing an execution now, which cannot be enforced until that time, it is enough to repeat that, even when the minor becomes of age, this fund will not be "payable absolutely," in the sense of the

foreign attachment law. The reserved discretion and control of the trustees of the Reform School extends quite to that time. It will then be for them to see and say, whether or not this fund shall be withdrawn for the use of the beneficiary. The conditions do not provide that the money shall be kept until the minor is of age, and then paid over to him, but, plainly and simply, that the fund is to " remain" till he has reached the age of twenty-one years, and " no part to be withdrawn, (that is, not at any time,) without the consent of the trustees."

The bank must have that consent when this minor becomes of age.

Nor is this any hardship upon the minor. It is simply a disability, which relates back to his sentence and to the misconduct for which that sentence was imposed.

6. Bounty money is not trustceable.

*Howard & Cleaves*, for the plaintiff.

TAPLEY, J. — The main question involved in this case is whether the Portland Savings Bank is chargeable as the trustee of Theodore Kucking, the principal defendant, for the money deposited therein in the name of said Kucking.

From the disclosure of the treasurer of the Bank, it appears that the principal defendant, who is a minor, was, prior to the time of the making of the deposit hereinafter to be mentioned, an inmate of the State Reform School; that while there under judicial sentence, the trustees of this institution, upon his personal request, granted him permission to enlist as a volunteer in the military service of the United States, "upon the condition that his bounty money, or such part of it as they thought proper, should be deposited for his benefit, in the bank;" that, on the second day of February, A. D. 1864, the trustees deposited, in his name, the sum of two hundred and fifty-five dollars upon the following special condition prescribed by the trustees in all such cases, and entered upon the books of the bank, viz. :

" All bounty money received by said boys shall be depos-

ited in the Portland Savings Bank, and there remain, with such additions as may be made from time to time under their allotments, till they have severally reached the age of twenty-one years, and no part of said deposits is to be withdrawn without the consent of the trustees of the State Reform School."

Upon a proper construction of the contract of deposit mainly depends the solution of the question in issue.

The trustees of the State Reform School are public officers whose powers and duties are prescribed by statute. In the absence of all evidence to the contrary, it will be presumed that their acts were intended to be within the scope of their legal powers and duties. Being public officers, all persons are presumed to know the extent of their powers, and to confine the contracts made with them within the legitimate scope of the trustees' powers.

One construction of the contract of deposit contended for is that this defendant can draw the fund whenever he shall reach "the age of twenty-one years."

The other is that it can never be drawn by any one without the consent of the trustees.

By the latter construction, the trustees would have the power to make the money deposited the absolute property of the bank; for he, in whose name and for whose benefit it was deposited, would thereby become as incapable of controlling it, at any period of his life, as would a stranger.

The first question which naturally suggests itself in connection with the latter construction is, had the trustees power to make such a disposition of the funds of the persons committed to their charge? There is no such power specifically granted them by any legislative enactment; and we cannot believe any such power is incidental to the powers specifically granted.

No person can be sentenced to the State Reform School for a term extending beyond his minority. R. S., c. 142, § 6. The control of the trustees over the person or property of one under their official charge absolutely ceases upon

his reaching his majority, and nothing else is necessary to reinstate him in all of his civil rights. His person and property are as free from all legal restraint and control by them as before commitment; and unless he has a legally appointed guardian, his rights and powers over his property are as full and complete as those of any citizen of the State.

This being the legal result of his attaining his majority, the trustees of the school and the alleged trustee are presumed to have known it and to have entered into the contract in view of and in subserviency to those limitations of power and authority.

If the construction contended for by the counsel for the bank be the true one, we must find that both the bank and the trustees of the Reform School intended to exceed the lawful authority of the latter, and assume a right over the defendant's property which the law had not given them. Such a presumption would be against law and cast an unjust reflection upon the integrity of the officers of the Reform School. The results which might arise from such a construction would be too iniquitous to be allowed to go into practice. The law imposes upon a person legally committed to the Reform School no such enduring disabilities. Whatever they are, they cease with the expiration of his term; we cannot believe these officers intended to usurp powers which are plainly against the clearest rights of the citizen, that of "possessing and protecting property."

An examination of the contract in the light of the legal powers and duties of these public officers and the presumptions of law heretofore alluded to, discovers the evident purpose of the trustees to have been to prevent the defendant's bounty money from being squandered while they had the care, custody and control of his person. There is no evidence that they assumed to be his guardian beyond that time and to transmit such guardianship to their successors throughout all time.

The first clause in the contract of deposit is, that it shall remain until the defendant has "reached the age of twenty-

one years." If the contract had stopped here, the money, being the defendant's own property, and it having been deposited in his name and for his benefit, could have lawfully been paid out by the bank to the defendant or upon his order before he had reached his majority. Perhaps the bank might not be compelled to pay before that time, but it might lawfully do so. And, to guard against such a possibility, the subsequent clause, that no part of it should be withdrawn without the consent of the trustees, was inserted, thus preventing any collusion between the bank and the defendant to defeat the designs of the trustees to protect the fund until its owner had " reached the age of twenty-one years," when he, by law, would pass out from their control. The real meaning is, that the deposit should not be withdrawn, during the defendant's minority, without the consent of the trustees of the Reform School. This construction accords to the former clause in the condition the full import of the language in which it is expressed; while the construction contended for by the bank renders it superfluous and wholly irreconcilable with the latter.

If the time when the deposit could be withdrawn depended absolutely upon the " consent of the trustees," why say anything about the " age of twenty-one years?" Whether twenty-one or forty-one, the " consent" is the indispensable prerequisite to the withdrawal; and, if there should never be any " consent," there never could be any withdrawal, and the bank would always retain the funds.

We concur with counsel, that we " ought not to assume in this suit" that these trustees " acted without authority;" for they have disclosed their authority, and we believe that such a construction should be given to their acts as will make them harmonize with that authority.

While it is true that, in making the deposit and in laying the restrictions upon it, the trustees acted in pursuance of the express consent of the minor, it is also true that that express consent is found only in the words, " the trustees gave permission upon the condition that his bounty money,

or such part of it as they thought proper, should be deposited for his benefit." There is no evidence of any other consent or authority from the minor. Nor is there anything in this consent warranting the conclusion that the minor intended any such contract as is contended for. Every reasonable presumption is against it.

The whole extent of the consent is that his bounty money should be deposited in the bank for his benefit. There is no time mentioned in the consent given ; but the simple fact that it was to be deposited shows it was to remain sometime. Immediately following this consent, the trustees made the deposit and fixed the time, viz., until he " reached the age of twenty-one years." What more reasonable time ; and how unreasonable that they should have gone beyond that time, and assumed to control it during his entire life, and even beyond that. To our minds, it is quite apparent that the clause prohibiting withdrawal, without the consent of the trustees, was not inserted as a nullification or qualification of the clause fixing the time at his reaching the " age of twenty-one years," and was not intended as a time limitation, but simply as a restriction upon the drawing of the funds during the time which had been fixed. By no other construction can both clauses be made effectual in accordance with a well settled rule of law.

The conclusion to which we have arrived is that the money deposited is due absolutely to the principal defendant, and payable to him or his order, at his arrival at the age of twenty-one years, without the aid of the consent of the trustees of the Reform School.

Being money " due absolutely to the principal defendant," it " may be attached before it has become payable," and the trustee " compelled to pay" at " the time appointed by the contract." R. S., c. 86, § 61.

*Exceptions overruled.*

APPLETON, C. J., KENT, DICKERSON and BARROWS, JJ., concurred.